**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 15-cv-02340-REB

DONALD PATRICK BENTLEY,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

**ORDER AFFIRMING COMMISSIONER**

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1],[1] filed October 21, 2015, seeking review of the Commissioner's decision denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges he was disabled during a closed period as a result of degenerative disc disease of the cervical and lumbar spine and a comminuted calcaneal (right heel) fracture, post-status subtalar and talocalcaneal fusion. After his applications for disability insurance benefits and supplemental security income benefits were denied,

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

plaintiff requested a hearing before an administrative law judge. This hearing was held on April 14, 2014. At the time of the hearing, plaintiff was 53 years old. He has a high school education and past relevant work experience as a carpenter, mechanic, welder, millwright, stock clerk, lumber handler, and a janitor. He did not engage in substantial gainful activity between April 25, 2011, and July 1, 2013.

The ALJ found plaintiff was not disabled during that time and therefore not entitled to a closed period of disability insurance benefits or supplemental security income benefits. Although the medical evidence established that plaintiff suffered from severe impairments, the judge found the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ determined plaintiff had the residual functional capacity to perform light work with certain postural restrictions during the alleged period of disability. Although this finding precluded plaintiff's past relevant work, the ALJ concluded there were jobs existing in significant numbers in the national and local economies he could perform. She therefore found plaintiff not disabled at step five of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the

impairments in making a disability determination." ***Campbell v. Bowen***, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  ***See Kelley v. Chater,*** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a quinquepartite sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(I)-(v).[2]  ***See also Williams v. Bowen*** 844 F.2d 748, 750-52

---

[2] Throughout this opinion, although I cite to relevant sections of Part 404 of Title 20 of the Code of Federal Regulations, which contain the Commissioner's regulations relating to disability insurance benefits, identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits.

(10th Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987).  The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy.  *Id.*  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown*, 912 F.2d at 1196.  It requires more than a scintilla but less than a preponderance of the evidence.  *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).  Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner.  *Id.*

### III.  LEGAL ANALYSIS

Although styled as four separate grounds of error, plaintiff's arguments all coalesce around a common theme:  that the ALJ erred in weighing the various medical

4

source opinions of record. Because my review of the opinions and the record in this case convinces me otherwise, I affirm.

Following a motorcycle accident at age 17, plaintiff experienced ongoing neck and back pain, which grew progressively worse over the ensuing years. (*See* Tr. 274.) Conservative modalities ultimately failed to provide long-term relief, and in December 2010, his family physician, Dr. Darvin Ritchie, referred plaintiff to Dr. Richard Lazar, an orthopedic surgeon. (*See* Tr. 368.) X-rays and an MRI revealed multilevel disc deterioration at C3 through C7, moderate to severe disc deterioration and annular bulging at L4-L5, and severe disc deterioration at L5-S1 with spondylolisthesis producing severe bilateral forminal stenosis. (Tr. 275.) Plaintiff agreed with Dr. Lazar's recommendation for fusion surgery. However, one week prior to date scheduled for surgery – April 24, 2011 (plaintiff's alleged date of onset) – Dr. Lazar was killed in an accident. (*See* Tr. 276, 277, 364, 440.) Plaintiff thereafter did not seek to reschedule the surgery. (Tr. 29, 39-40.)

Meanwhile, in March 2012, plaintiff suffered a comminuted fracture of his right heel after falling from a ladder while working on a house. (Tr. 354.) Although surgery was recommended, plaintiff was delayed in seeking an orthopedic evaluation under May. Because the fracture already had begun to heal, orthopedic surgeon Dr. Shawn Nakamura recommended postponing surgery to allow the fracture to consolidate. (Tr. 413.) Dr. Nakamura ultimately performed subtalar and talocalcaneal fusions in August 2012 (Tr. 325-326) and followed plaintiff post-operatively through May 2013 (Tr. 404-410, 431). Plaintiff returned to his full-time job at Home Depot that July. (Tr. 41, 465.)

At issue in this appeal are the opinions of the three medical sources the ALJ

considered in formulating the disability opinion.[3] With respect to each, the ALJ found the more restrictive functional limitations suggested inconsistent with the objective medical evidence of record, and therefore did not adopt those limitations as part of the residual functional capacity assessment. Plaintiff maintains in so doing, the ALJ improperly substituted her own, lay judgment for the medical opinions of plaintiff's doctors. Review of the ALJ's opinion and the medical source statements proves otherwise.

In August 2012, Dr. Robert Bennett, an orthopedist, completed a "Med-9" form[4] on plaintiff's behalf, in which he opined that plaintiff was unable to work in any occupation due to degenerative disc disease and a fractured heel. (Tr. 348, 463.) Subsequently, in March 2013, Dr. Bennett completed a more comprehensive form in which, based on his prior examination, he suggested plaintiff was capable of no more than sedentary work. (Tr. 458-461.)[5] The ALJ found these restrictions inconsistent with the objective medical evidence, "including the normal gait, negative neck or back atrophy, full extremity muscle strength, and negative bilateral straight leg raise test[.]"

---

[3] Plaintiff also argues that the ALJ impermissibly relied on the opinion of a Single Decision Maker ("SDM") in finding him capable of light work. Had this occurred, it would be improper. *Wells v. Colvin*, – F.Supp.3d –, 2016 WL 5362467 at *3 (D. Colo. Sept. 23, 2016). However, while the ALJ's residual functional capacity assessment is consistent with the SDM's opinion (Tr. 66), she did not cite to or purport to rely on that opinion as part of the disability determination. Moreover, although she referenced that opinion in proposing a hypothetical to the vocational expert at the hearing, she noted also the proposed light restrictions were based on her review of the file as well. (Tr. 45.) Given that her conclusions as to plaintiff's residual functional capacity otherwise are indeed supported by substantial evidence, the court finds no reversible error in these circumstances.

[4] The Med-9 is a form which the Colorado Department of Human Services relies on to determine eligibility for benefits under Colorado's Aid to the Needy Disabled program. *See Deherrera v. Colvin*, 175 F.Supp.3d 1247, 1253 (D. Colo. 2016).

[5] As these are the only two visits to Dr. Bennett evidenced in the record, there is no sense in which he can be considered a treating physician. The ALJ therefore did not err in failing to consider whether his opinion was entitled to controlling weight. *See Duncan v. Astrue*, 2009 WL 1254737 at *7 (D. Kan. May 5, 2009).

(Tr. 15.)[6]

Plaintiff maintains the ALJ was unqualified to opine that these findings were inconsistent with Dr. Bennett's conclusions as to their functional effects. While "[a]n ALJ is not free to substitute his own medical opinion for that of a disability claimant's treating doctors," **Hamlin v. Barnhart**, 365 F.3d 1208, 1221 (10th Cir. 2004), the ALJ did not transgress that boundary here. The ALJ was not purporting to assert a medical opinion but to craft a residual functional capacity assessment, which is not a medical determination but an administrative one, and thus reserved to the Commissioner. 20 C.F.R. § 404.1546(c); **Lumpkin v. Colvin**, 112 F.Supp.3d 1169, 1173 (D. Colo. 2015). The ALJ here merely evaluated Dr. Bennett's opinion in the context of the record as a whole, which is entirely within her legitimate purview. **See Lopez v. Barnhart**, 183 Fed. Appx. 825, 829 (10th Cir. June 13, 2006).[7] The supportability *vel non* of that opinion is an entirely proper consideration in determining how much weight it should be given. 20 C.F.R. § 404.1527(c)(3).

What is most striking in that regard is not so much that Dr. Bennett's opinions were not supported by the objective medical evidence, but the absolute absence of any objective medical findings substantiating those opinions. The whole of Dr. Bennett's treatment records consist of a single paragraph in which he noted plaintiff was suffering from a "shattered" right heel and herniated lumbar discs and wanted the doctor to

---

[6] Neither party raises any issue related to the fact that the medical evidence on which the ALJ purportedly relied to discredit Dr. Bennett's opinion consisted of treatment records prior to plaintiff's alleged date of onset. (*See* Tr. 274-276 (Dr. Lazar examination of December 2, 2010), 368 (Dr. Ritchie notes of November 17, 2010).)

[7] By contrast, the ALJ in **Hamlin** was found to have erred in concluding that the plaintiff's complaints were not credible because, *inter alia*, he did not require an assistive device for his neck, where no medical professional had ever opined that such a device was required or would have proven efficacious in addressing the plaintiff's pain. **See Hamlin**, 365 F.3d at 1121.

7

complete a Med-9 form on his behalf.[8]  There is no indication what records, if any, Dr. Bennett reviewed (or if instead he was merely recounting plaintiff's own report of his impairments), or what examination, if any, he performed.  The conclusory opinion expressed in the Med-9 form therefore properly could have been rejected outright.  **See Chapo v. Astrue**, 682 F.3d 1285, 1289 (10th Cir. 2012).  As the slightly more detailed (but still largely conclusory) vocational form Dr. Bennett completed in March 2013 was expressly based on this earlier visit (**see** Tr. 461), that opinion adds no ballast to Dr. Bennett's unsupported conclusions.[9]

For similar reasons, I perceive no reversible error in the ALJ's analysis of Dr. Nakamura's or Dr. Lofley's opinions.  The ALJ rejected Dr. Nakamura's suggestion that plaintiff would "need a break" after one hour of standing (Tr. 454), finding that opinion inconsistent with the objective medical evidence, "*including* the repeated notes regarding the claimant's healed right ankle fracture" (Tr. 14-15 (emphasis added).)  Although the mere fact that the fracture had healed is not necessarily indicative of plaintiff's ability to stand for longer periods, the ALJ's use of the term "including" plainly points to the broader findings reflected in Dr. Nakamura's records, which in fact contain nothing to suggest plaintiff had difficulty standing.  To the contrary, Dr. Nakamura's treatment notes demonstrate plaintiff experienced gradual but steady improvement in the ability to walk following surgery, and plaintiff consistently was reported to be "doing

---

[8] The mere existence of such impairments, of course, says nothing about their effects on plaintiff's functional capacity.  **Kelley**, 62 F.3d at 338; **Birkle v. Colvin**, 82 F.Supp.3d 1308, 1311 (D. Colo. 2015).

[9] Admittedly, the ALJ did not rely on these reasons in weighing Dr. Bennett's opinions.  **See Robinson v. Barnhart**, 366 F.3d 1078, 1084 (10th Cir. 2004 ) (decision must be considered based on reasons articulated by the ALJ).  Nevertheless, given the utter lack of any substantiation for those opinions, any such error is undoubtedly harmless, as the ALJ's determination as to the weight to be afforded the opinions is still fully supportable.  **See Williams v. Chater**, 1995 WL 490280 at *2 (10th Cir. Aug.16, 1995); **Bernal v. Bowen**, 851 F.2d 297-302-03 (10th Cir. 1988).

well," with some pain but no significant complaints or problems. (Tr. 404-410, 431.) Indeed, plaintiff graduated from a "CAM walker" boot at 25% weight-bearing to a cane and full weight-bearing within a month of surgery, which Dr. Nakamura noted was "a little premature[], but he is not having problems." (Tr. 407.)[10] Although plaintiff still had some "aches" in his foot and ankle at night at the time he was discharged from Dr. Nakamura's care, there is no indication that this pain was related to or exacerbated by prolonged standing. (*See* Tr. 431.) Based on this evidence, the ALJ did not err in rejecting the suggested standing limitation.

Finally, the ALJ afforded "partial weight" to Dr. Lofley's opinion insofar as it pertained to a restriction to light lifting and a limitation to occasional balancing and climbing ramps and stairs. However, she found "excessive" – and thus did not adopt – the consultative examiner's suggested standing and walking restrictions, some of his recommended postural restrictions, and his "precautionary" environmental limitations. (Tr. 15, 433-439, 440-445.)[11] In this regard, the ALJ noted Dr. Lofley's findings of a negative bilateral supine straight leg test[12] and full bilateral lower extremity strength. (Tr. 15, 444.)[13] Plaintiff maintains the ALJ erred in failing to acknowledge or discuss other aspects of the examination and report, including that plaintiff walked with a limp,

---

[10] It appears plaintiff also continued to use a boot and/or splints until three months after surgery, at which point they were discontinued. (*See* Tr. 405, 407.)

[11] It should be noted also that Dr. Lofley suggested plaintiff had been so limited since December 2010 (Tr. 439), encompassing a period of time in which plaintiff was still working, and nearly a year and a half prior to his alleged date of onset.

[12] The supine straight leg test is used to diagnose disc herniation. (*See* Physiopedia, ***Straight Leg Raise Test***, available at http://www.physio-pedia.com/Straight_Leg_Raise_Test) (last accessed January 25, 2017).

[13] The ALJ also noted that plaintiff exhibited full grip strength, which of course has no obvious connection to his abilities to walk and stand, but does bear on the ALJ's determination, contrary to Dr. Lofley's opinion, that plaintiff could climb ladders and scaffolds. (*See* Tr. 15.)

9

had tenderness to palpation of the thoracic and lumbar spine, and had some pain with heel and toe walking, or to explain why she apparently rejected Dr. Lofley's suggestion that "a cane would be useful at intermediate or long distances."  (*See* Tr. 440, 443, 445.)[14]

Of course, if a medical source opinion is not adopted, the ALJ has a duty to explain why.  **Social Security Ruling** 96-8p, 1996 WL 374184 at *7 (SSA July 2, 1996). In so doing, she need not address every piece of evidence, but must discuss not only the evidence on which she relies but also "the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects."  ***Clifton v. Chater***, 79 F.3d 1007, 1010 (10th Cir. 1996).   Nevertheless, to the extent the ALJ failed to do so here, the court cannot conclude that such error warrants remand.

As noted above, the residual functional capacity assessment is an administrative determination "based on all of the relevant medical *and other* evidence." 20 C.F.R. § 404.1545(a)(3) (emphasis added).  The ALJ stated she had reviewed the entire medical record and considered all opinion evidence in conformity with the relevant regulations. (Tr. 13.)  A reviewing court generally takes a lower tribunal at its word when it says it has considered a matter, and the record here gives no reason to dispute the ALJ's representation that she did so.  **See Hackett v. Barnhart**, 395 F.3d 1168, 1173 (10th Cir. 2005); ***Manning v. Colvin***, 182 F.Supp.3d 1156, 1164 (D. Colo. 2016).  Indeed, it is plain that the ALJ considered the entirety of the record, including plaintiff's "wide range of reported activities," his successful surgery, and "the lack of significant back pain

---

[14] The court notes that although Dr. Lofley recommended the use of a cane, there is no evidence that plaintiff ever used a cane for more than a few months immediately following his surgery.  (***See supra***, note 10.)

treatment during the relevant time period" in concluding that plaintiff retained the functional capacity for light work. (Tr. 15.)

Indisputably, plaintiff had some degree of pain and limitation associated with his temporary impairments. Yet disability requires more than the inability to work without pain. **Brown v. Bowen**, 801 F.2d 361, 362-63 (10th Cir.1986) (citation and internal quotation marks omitted); **Carter v. Colvin**, 27 F.Supp.3d 1142, 1152 (D. Colo. 2014), **aff'd**, 597 Fed. Appx. 501 (10th Cir. 2015). The ALJ here properly discharged her duty to assess plaintiff's residual functional capacity based on all the evidence of record. Her opinion is supported by substantial evidence and therefore must be affirmed.

## IV.  ORDERS

For these reasons, I find no reversible error in the ALJ's disability determination, which accordingly must be affirmed.

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is affirmed

Dated January 26, 2017, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn
Robert E. Blackburn
United States District Judge